IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DIRECTV, INC.,**

      **Plaintiff,**

  vs.                                Civil Action 2:04-CV-930
                                       Judge Sargus
                                       Magistrate Judge King

**TIM NEFF,**

      **Defendant.**

**REPORT and RECOMMENDATION**

Plaintiff DIRECTV, Inc. [hereinafter "DIRECTV"] brings this action under the Federal Communications Act of 1934 [hereinafter "FCA"], 47 U.S.C. § 605, the Digital Millennium Copyright Act, 17 U.S.C. §§ 1202-1205, and the Electronic Communications Privacy Act [hereinafter "ECPA"], 18 U.S.C. § 2510 *et seq.* On January 5, 2005, the default of defendant Tim Neff [hereinafter "Defendant"] was entered. Doc. No. 7. Pursuant to an order of reference, Doc. No. 9, this matter is before the Magistrate Judge on Plaintiff DIRECTV's January 10, 2005, motion for default judgment against Defendant, Doc. No. 8. A hearing on the motion was held on June 8, 2005; Defendant failed to appear.

DIRECTV requests that the Court award statutory damages of $10,000 for each pirate access device allegedly manufactured, assembled, modified, imported, exported, distributed, and/or sold without authorization in violation of 47 U.S.C. § 605(e)(4) or purchased in violation of 47 U.S.C.

§ 605(a), and a further award of $1031.56 for DIRECTV's reasonable attorney fees and costs.[1]

I.      **Background**

DIRECTV encrypts its satellite transmissions to prevent unauthorized viewing of its satellite television programming. *Complaint*, at ¶ 2; *Declaration of Jaime Sichler,* at p.2, attached as Exhibit 1 to Doc. No. 11 [hereinafter "*Declaration*"]. With the assistance of law enforcement, DIRECTV executed several writs of seizure on a mail shipping facility used by several major sources of pirate technologies. *Complaint,* at ¶ 3; *Declaration,* at p. 10. DIRECTV obtained sales receipts, shipping records, email communications, credit card receipts and other records that indicated that Defendant had purchased illegally modified DIRECTV access cards and other pirate access devices. *Complaint,* at ¶3; *Declaration,* at p. 10.

According to DIRECTV, Defendant purchased approximately six signal theft devices beginning in November 2001 and continuing until mid-December 2001. *Complaint*, ¶ 7; *Declaration,* at p. 10. Specifically, on or about November 27, 2001, Defendant purchased one pirate access device consisting of a printed circuit board device called a "Dominated Wafer Board" from Loader1.com. *Complaint,* ¶ 7(a). On or about December 4, 2001, Defendant purchased two pirate access devices consisting of printed circuit board devices called "Dominator Wafer Boards," from Loader1.com. *Id.,* ¶ 7(b). On or about December 19, 2001, Defendant purchased three pirate access devices known as the "Emulator Combo #2," consisting of a programmer, a printed circuit board device called a "Boot Loader Board," and an emulator, from Loader1.com. *Id.,* at ¶ 7(c). The

---

[1]Plaintiff initially requested an award of attorney fees in the amount of $766.50. At the evidentiary hearing held on June 8, 2005, Plaintiff requested that this amount be increased by $265.00 to reflect the additional time its attorney spent preparing for and attending the evidentiary hearing.

devices were shipped to Defendant Neff in Bellefontaine, Ohio. *Id.*

**II.    Discussion**

Section 605(e)(3)(a) of the Communications Act of 1934, as amended, permits any person who has been aggrieved by any violation of § 605(a)[2] or § 605(e)(4)[3] to bring a civil action. Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), a statutory award of "not less than $1,000 or more than $10,000" can be awarded for each violation of 47 U.S.C. § 605(a) "as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Furthermore, Section 605(e)(3)(C)(i)(II) authorizes this Court to award statutory damages of not less than $10,000 nor more than $100,000 for each violation of § 605(e)(4). Section 605(e)(3)(C)(i)(II) provides in pertinent part:

> [F]or each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).

DIRECTV argues that it is entitled to damages in the amount of $60,000.00. Section 605(e)(4) provides that "[f]or the purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall

---

[2] Section 605(a) of Title 47 of the United States Code provides in pertinent part:

No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

[3] Section 605(e)(4) applies to "[a]ny person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services. . . ."

3

be deemed a separate violation." The statute requires the Court to exercise its discretion in determining what damages are appropriate. A court may, in its discretion, reduce the statutory damages to $250 when it "finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section." 47 U.S.C. § 605(e)(3)(C)(iii).

> "The Court should exercise this discretion only in 'those rare instances of ignorance of the law on the part of one adjudged to have violated it.' " *Joe Hand Promotions, Inc. v. D.M.B. Ventures, Inc.,* No. Civ. A. No. 93-2656, 1995 WL 683847, at *2 (E.D.La. Nov. 14, 1995) (quoting 130 Cong. Rec. 31,875 (Statement of Sen. R. Packwood), *reprinted in* 1984 USCCAN, at 4750-51). Such a reduction may be appropriate where there is no evidence that the defendant knew that he was violating the law. *See Don King Prods./ Kingvision v. Lovato,* No. C-95-2827 (THE), 1996 WL 682006, at *4 (N.D.Cal. Nov. 15, 1996).

*DIRECTV, Inc. v. Boonstra*, 302 F. Supp. 2d 822, 830 (W.D. Mich., 2004).

In *Declaration*, Jamie Sichler, an investigator for DIRECTV, indicates that DIRECTV spends considerable amounts of money in its anti-piracy efforts. *Declaration,* at p. 4. DIRECTV transmits electronic countermeasures [hereinafter "ECMs"] to dismantle illegal access cards. *Id.,* at p. 5. DIRECTV estimates that a typical user of a modified access card or other signal theft device would view programming equal to that of one of its legitimate high-end customers. *Id.,* at p. 7. After investing hundreds of dollars in illegal devices and software, a user of a theft device would be expected to view a significant amount of television programming. "Anecdotal information obtained by DIRECTV suggests that users of modified access cards are heavy consumers of sport subscriptions, pay-per-view movies and events ..., and adult programming." *Id.,* at p. 8. According to Sichler, the average monthly bill sent to the top 10% of DIRECTV's legitimate customers in 2003 was $229.08. *Id.*

Based on the large number of pirate access devices purchased by Defendant, DIRECTV suggests that he was selling or otherwise distributing the devices to individuals who wished to

receive DIRECTV programming without authorization. *Declaration,* at p. 13.  Assuming that Defendant permitted at least 6 individuals to receive DIRECTV programming without authorization for at least 29 months, DIRECTV calculates that it suffered $39,859.92 in actual damages. *Id.*  This calculation is based on the typical high end paying customer's average monthly bill of $229.08 multiplied by 6 individuals over 29 months.

Defendant was afforded the opportunity to challenge the damages sought by DIRECTV at the June 8, 2005, hearing, Doc. No. 9, at p. 2, but failed to do so. *See Cablevision of S. Conn., L.P. v. Smith*, 141 F. Supp. 2d 277, 287 (D. Conn. 2001) (it was reasonable to infer that a defendant who failed to appear sold or distributed nineteen of the twenty black market decoders he allegedly purchased from an unauthorized dealer).  Consequently, the Magistrate Judge **RECOMMENDS** that **JUDGMENT** be entered in favor of DIRECTV and against Defendant in the amount of $60,000.00 in statutory damages and $1,031.56 in attorneys fees and costs, for a total of $61,031.56.

For the reasons set out above, it is **RECOMMENDED** that Plaintiff DIRECTV's January 10, 2005, motion for default judgment, Doc. No. 8, be **GRANTED** and that **JUDGMENT** be entered in the amount of $61,031.56.

If any party seeks reconsideration of this **REPORT and RECOMMENDATION**, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this **REPORT and RECOMMENDATION**, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). Responses and objections must be filed within ten (10) days after being served with a copy hereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the **REPORT and RECOMMENDATION** will result in a waiver of the right to initial *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the **REPORT and RECOMMENDATION**. *See Thomas v. Arn,* 474 U.S. 140 (1985); *Harris v. City of Akron,* 20 F.3d 1396 (6th Cir. 1994); *Smith v. Detroit Federation of Teachers, Local 231, American Federation of Teachers, AFL-CIO,* 829 F.2d 1370 (6th Cir. 1987).


<u>June 10, 2005</u>                                               <u>  s/ Norah McCann King  </u>
                                                                           Norah M$^c$Cann King
                                                                      United States Magistrate Judge